# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5;
JOHN DOE 6; JANE DOE 1; JANE DOE 2; JANE DOE 3; JANE DOE 4;
JANE DOE 5,

Plaintiffs-Appellees,

v.

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE;
CENTRAL INTELLIGENCE AGENCY; JOHN RATCLIFFE, in his
official capacity as Director of the Central Intelligence Agency; TULSI
GABBARD, in her official capacity as Director of National Intelligence,

Defendants-Appellants.

On Appeal from the United States District Court
for the Eastern District of Virginia

## REPLY BRIEF FOR APPELLANTS

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. McARTHUR
*Deputy Assistant Attorney
General*

ERIK S. SIEBERT
*United States Attorney*

CHARLES W. SCARBOROUGH
JENNIFER L. UTRECHT
*Attorneys, Appellate Staff
Civil Division, Room 7710
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 353-9039*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ................................ 1

ARGUMENT ......................................................................................... 5

I. Plaintiffs Have Not Established a Justiciable Constitutional Due Process Claim............................................................................... 5

    A. Plaintiffs Have Not Established a Cognizable Property or Liberty Interest in Their Continued Employment.........................6

    B. Plaintiffs Have Not Demonstrated That They Are Likely to Succeed on the Merits of an *Accardi* Claim .............................15

II. The District Court Abused Its Discretion by Concluding That the Balance of Equitable Factors Weighs in Favor of a Preliminary Injunction ........................................................................................24

III. The Injunction Is Overbroad and Improperly Intrudes on the Directors' Discretionary and Otherwise Unreviewable Authority .......28

CONCLUSION......................................................................................33

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page(s)**

*American Farm Lines v. Black Ball Freight Serv.*,
  397 U.S. 532 (1970) ........................................................................... 20

*Board of Curators of the Univ. of Mo. v. Horowitz*,
  435 U.S. 78 (1978) ............................................................................. 19

*Board of Regents of State Colls. v. Roth*,
  408 U.S. 564 (1972) ........................................................................ 7, 14

*Crosby-Bey v. District of Columbia*,
  786 F.2d 1182 (D.C. Cir. 1986) ......................................................... 19

*Department of the Navy v. Egan*,
  484 U.S. 518 (1988) ............................................................................ 29

*Doe v. Casey*,
  796 F.2d 1508 (D.C. Cir. 1986), *aff'd in part, rev'd in part sub nom.*,
  *Webster v. Doe*, 486 U.S. 592 (1988) ......................................... 15, 18

*Doe v. Gates*,
  981 F.2d 1316 (D.C. Cir. 1993) ...................................................... 8, 15

*Elhady v. Kable*,
  993 F.3d 208 (4th Cir. 2021) ............................................................. 24

*Evans v. Chalmers*,
  703 F.3d 636 (4th Cir. 2012) ........................................................ 25-26

*Guerra v. Scruggs*,
  942 F.2d 270 (4th Cir. 1991) ............................................................ 7-8

*Hegab v. Long*,
  716 F.3d 790 (4th Cir. 2013) ............................................................. 30

*Kentucky Dep't of Corr. v. Thompson*,
  490 U.S. 454 (1989) ............................................................................. 8

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ...................................................................... 12, 13

ii

*Olim v. Wakinekona,*
    461 U.S. 238 (1983) ...................................................... 14, 19

*Sampson v. Murray,*
    415 U.S. 61 (1974) ............................................... 26-27, 27

*Sherley v. Sebelius,*
    644 F.3d 388 (D.C. Cir. 2011) ....................................... 11

*Smith v. Ashcroft,*
    295 F.3d 425 (4th Cir. 2002) ....................................... 7, 10

*Steenholdt v. FAA,*
    314 F.3d 633 (D.C. Cir. 2003) ....................................... 16

*Stewart v. Bailey,*
    7 F.3d 384 (4th Cir. 1993) ........................................ 8, 15

*Trump v. CASA, Inc.,*
    145 S. Ct. 2540 (2025) ............................................... 27

*United States v. Heffner,*
    420 F.2d 809 (4th Cir. 1969) ........................................ 19

*United States v. Morgan,*
    193 F.3d 252 (4th Cir. 1999) ................................... 19-20, 20

*United States ex rel. Accardi v. Shaughnessy,*
    347 U.S. 260 (1954) ............................................... 1, 15-16

*Vietnam Veterans of Am. v. Secretary of the Navy,*
    843 F.2d 528 (D.C. Cir. 1988) ........................................20

*Webster v. Doe,*
    486 U.S. 592 (1988) ................................. 1, 5, 6, 11, 15, 18, 29, 30, 31

*Wilson v. Johnson,*
    805 F.2d 394 (4th Cir. 1986) ........................................ 19

**Statutes:**

National Security Act of 1947:

50 U.S.C. § 3001 *et seq.* ........................................................................ 1

50 U.S.C. § 3024(m)(1) ...................................................................... 1, 5

50 U.S.C. § 3036(e)(1) ........................................................................ 1, 5

50 U.S.C. § 3036(e)(2) ......................................................................... 12

**Other Authority:**

Restatement (Second) of Torts § 564A (A.L.I. 1977), Westlaw
(databased updated Oct. 2024) ........................................................ 25

## INTRODUCTION AND SUMMARY OF ARGUMENT

The district court abused its discretion by prohibiting the Director of the Central Intelligence Agency (CIA) and the Director of the Office of National Intelligence (ODNI) from effectuating the termination of plaintiffs' employment. As explained in our opening brief, the National Security Act, 50 U.S.C. § 3001 *et seq.*, vests extraordinary discretion in the Directors to terminate employment of agency personnel whenever they "deem[] the termination . . . necessary or advisable in the interests of the United States." *Id.* § 3036(e)(1); *id.* § 3024(m)(1). This broad grant of authority reflects a deliberate congressional judgment to foreclose judicial review over non-constitutional claims challenging the Directors' termination decisions. *Webster v. Doe*, 486 U.S. 592 (1988).

The district court premised its preliminary injunction on a finding that plaintiffs had established a likelihood of success on their claim that the agencies had violated their own regulations under *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). That conclusion was based on a fundamental misreading of an internal CIA regulation, AR 4-16. The district court construed that regulation as requiring the Directors to provide plaintiffs with an opportunity to administratively appeal their termination

notices and seek consideration for assignment to different positions within the agencies. But AR 4-16 repeatedly disavows any intent to create binding rights and expressly affirms the Directors' plenary authority to bypass all procedures set forth in the regulation when they deem an employee's termination necessary or advisable in the interest of the United States. Moreover, AR 4-16 makes clear that the procedures for appeal and reassignment identified by the district court apply only to terminations for excess employment in which a lower-level official—that is, someone other than the Directors—initiates a termination. They have no application where, as here, the Directors themselves make the discretionary determination to terminate employment pursuant to their broad authority under the National Security Act.

Plaintiffs' response brief makes little effort to meaningfully engage with the government's arguments regarding the flaws in the district court's interpretation of AR 4-16. Plaintiffs do not, for example, attempt to reconcile the district court's finding that the CIA intended to be bound by any procedures contained in AR 4-16—which is a necessary predicate for an *Accardi* claim—with the regulation's repeated disavowal of any intent to create binding rights. Likewise, plaintiffs do not address the fact that AR 4-

16 states that terminations made by the Director pursuant to his authority under the National Security Act may occur "without regard to *any* procedural steps set forth in this regulation or elsewhere." JA068 (AR 4-16 § II.D) (emphasis added). And plaintiffs do not explain how the appeal and reassignment procedures identified by the district court—which on their face contemplate a process for appeal before lower-level officials—could reasonably apply to discretionary termination decisions by the Directors without creating unreasonable or impracticable results. Plaintiffs' failure to address these flaws in the district court's reasoning supports reversal.

Instead, plaintiffs urge that it is irrelevant whether AR 4-16 requires appeal and consideration for reassignment, because, in their view, plaintiffs have a right to post-termination appeal and consideration for reassignment that exists independent of AR 4-16 and that cannot be displaced by the regulation. Notably, however, plaintiffs have not identified any plausible source of this right. The National Security Act does not require such procedures, and plaintiffs' suggestion that they have a freestanding constitutional right to these post-termination procedures fundamentally misunderstands the applicable inquiry.

In order to assert a constitutional due process claim, plaintiffs must demonstrate that they have a protected property or liberty interest. This requires plaintiffs to identify a source of positive law—a statute or regulation—that creates a legitimate entitlement to a benefit and meaningfully limits the government's authority to deprive plaintiffs of that benefit. It is only *after* identifying such a cognizable right that courts inquire as to the appropriate procedures to protect that right. But as the district court recognized, the broad discretionary termination authority provided to the Directors under the National Security Act renders plaintiffs, in effect, at-will employees. Plaintiffs thus have not—and cannot—established a cognizable interest in their continued employment with the agencies.

Moreover, the district court exceeded its remedial authority by issuing an injunction that prohibits the agencies from taking any further action to terminate plaintiffs without first demonstrating to the court's satisfaction that the agencies have complied with the appeal and reassignment procedures contained in AR 4-16. In addition to being improper because plaintiffs have not demonstrated irreparable harm, the injunction improperly requires ongoing judicial preclearance before termination, which imposes real-world operational costs on the agencies and is plainly contrary to the

broad grant of discretionary authority to the Directors over personnel decisions. Plaintiffs suggest that the appeal and reassignment procedures do not interfere with this grant of authority because they are, in plaintiffs' view, *post*-termination procedures. But the district court's injunction imposes *pre*-termination clearance procedures, and it is thus improper even under plaintiffs' view. This Court should accordingly vacate the injunction.

## ARGUMENT

## I. Plaintiffs Have Not Established a Justiciable Constitutional Due Process Claim

The National Security Act gives the Directors of the CIA and National Intelligence extraordinarily broad discretion to terminate the employment of personnel within their respective agencies. *See* 50 U.S.C. § 3036(e)(1); *id.* § 3024(m)(1). As plaintiffs acknowledge (Br. 2), the Supreme Court in *Webster v. Doe* held that the statutory precursor to this broad grant of authority "exhibits . . . extraordinary deference to the Director in his decision to terminate individual employees" and "indicate[s] that Congress meant to commit individual employee discharges to the Director's discretion" by law, thereby insulating them from judicial review. 486 U.S. 592, 601 (1988). The Court stressed that the statute permits termination of employment "whenever the Director 'shall *deem* such termination necessary or advisable

in the interests of the United States,'" and it concluded that this broad standard "fairly exudes deference to the Director," and "foreclose[s] the application of any meaningful judicial standard of review." *Id.* at 600. The Court thus held that the statute's broad grant of discretionary authority forecloses judicial review of challenges to the Director of the CIA's termination decisions, except those seeking declaratory or injunctive relief for alleged constitutional violations. *Id.* at 600-01, 604-05.

Plaintiffs do not dispute that the National Security Act commits termination decisions to the Directors' discretionary authority by law. Br. 18-19. Nor do plaintiffs dispute that the Directors exercised this discretion when they determined to terminate plaintiffs' employment here. Thus, as the district court recognized—and as plaintiffs do not appear to meaningfully dispute—plaintiffs' challenge to the termination decisions at issue can proceed only if plaintiffs have plausibly alleged a colorable constitutional claim. Plaintiffs here have not—and cannot—make this showing.

## A. Plaintiffs Have Not Established a Cognizable Property or Liberty Interest in Their Continued Employment

**1.** In order to proceed on a constitutional due process claim, a plaintiff must first establish that he has a protected "property or liberty interest at stake." *Smith v. Ashcroft*, 295 F.3d 425, 429 (4th Cir. 2002). This requires

plaintiffs to identify a source of law—such as a statute or regulation—that "secure[s] certain benefits and that support[s a] claim[] of entitlement to those benefits." *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). To do so, plaintiffs must show "more than a mere expectation (even one supported by consistent government practice) of a benefit." *Smith*, 295 F.3d at 429. Instead, they must identify a source of positive law that creates the benefit and that "act[s] to limit meaningfully the discretion of the decision-makers" to deprive the plaintiff of that benefit. *Id.* at 429-30 (quotation marks omitted). "Discretionary statutory 'rights' do not create liberty or property interests protected by the Due Process Clause." *Id.* at 430.

Plaintiffs here have not demonstrated a protected property or liberty interest in their continued employment with the agencies. To the contrary, the National Security Act confers broad discretion on the Directors of the CIA and National Intelligence to discharge agency personnel. This express grant of discretionary authority renders plaintiffs, in effect, at-will employees; the statute does not grant them a cognizable property or liberty interest in their continued employment. *See Guerra v. Scruggs*, 942 F.2d 270, 278 (4th Cir. 1991) (holding that the plaintiff had no property or liberty

interest in continued employment and that "[t]he language of the statute" granted the government "discretion to discharge" the plaintiff); *see also Doe v. Gates*, 981 F.2d 1316, 1320-21 (D.C. Cir. 1993) (holding that there is no property right to continued employment in the CIA).

In our opening brief, we demonstrated that the district court erred in concluding that the CIA's internal regulation, AR 4-16, provides plaintiffs with a cognizable property interest in their continued employment. As this Court has recognized, a regulation does not establish a cognizable property interest unless it "prescribe[s] substantive rules of decision . . . to guide the decisionmaker's discretion, such as 'specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow.'" *Stewart v. Bailey*, 7 F.3d 384, 392 (4th Cir. 1993) (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989)). But AR 4-16 expressly and repeatedly disclaims any intent to create any enforceable property rights. *See* JA063 (AR 4-16 § II.A) ("[N]othing in this regulation . . . shall be construed as creating for any employee any property or other interests or privileges in his or her employment."); JA069 (AR 4-16 § II.F) (providing that the regulation does not "create[] or confer[] any right,

benefit, or privilege, whether substantive or procedural, for continued [CIA] employment").

Likewise, AR 4-16 does not in any way constrain the Director of the CIA's discretion to terminate employees when he deems it to be necessary or advisable in the interests of the United States under the National Security Act. In remarkably clear language, the regulation expressly states that the Director of the CIA's authority to terminate employees is "[n]ot constricted, limited, affected, or otherwise controlled by any of the procedures set forth in this regulation" and explains that the Director's ability to exercise this authority is "[i]n abrogation of the existence of any interests or privileges of any employee in his or her employment which might otherwise be created or established by this regulation." JA068 (AR 4-16 § II.D). Because this clear language cannot plausibly be read to confer any substantive or procedural rights that constrain the Director's broad authority to terminate employees, the district court erred in concluding that AR 4-16 creates any judicially enforceable procedural or substantive rights that could support a due process claim.

**2.** On appeal, plaintiffs appear to acknowledge (*e.g.*, Br. 23, 28-29) that the various provisions of AR 4-16 cited in the government's opening brief

preserve the Directors' discretionary authority to terminate plaintiffs' employment. *Cf.* Br. 29 ("The District Court acknowledged that Plaintiffs do not maintain a right to continued ODNI or CIA employment . . . ."). That should be dispositive. If neither the statute nor the regulation constrains the Directors' discretionary authority, plaintiffs do not have a protected property or liberty interest sufficient to allege a colorable constitutional due process claim. *See Smith*, 295 F.3d at 430.

Plaintiffs nevertheless urge that they have asserted a colorable constitutional claim because, in their view, they have a protected interest in the agencies following certain "post-termination" procedures—namely, the right to appeal a termination decision and seek reassignment to another position within the agency. But plaintiffs make no meaningful attempt to defend the district court's reliance on AR 4-16 as the source of these procedural rights. Nor could they. As explained in the government's opening brief (at 24-26), AR 4-16 simply does not require the agency to provide an employee who has been terminated pursuant to the Directors' broad statutory authority with any procedural protections—post-termination or otherwise. *E.g.*, JA067-068 (AR 4-16 § II.D) (providing for "Termination Without Procedures").

Rather than defending the district court's erroneous view that AR 4-16 confers certain procedural rights, plaintiffs argue (Br. 23, 28-29) that AR 4-16 is largely irrelevant because, in their view, the National Security Act independently confers a right to appeal and reassignment. The district court did not rely on this argument in finding that plaintiffs had demonstrated a likelihood of success on the merits of their due process claim, and it provides no basis for affirming the preliminary injunction. *E.g.*, *Sherley v. Sebelius*, 644 F.3d 388, 398 (D.C. Cir. 2011) ("[T]he plaintiffs have not identified, nor have we found, any precedent for upholding a preliminary injunction based upon a legal theory not embraced by the district court."). Indeed, plaintiffs' motion for a preliminary injunction did not attempt to identify any purported statutory right to appeal or reassignment, and accordingly, this argument has been waived.

In any event, plaintiffs' contention that the National Security Act itself limits the Director's broad termination discretion (Br. 23-24) lacks merit. Plaintiffs note that the provision immediately following the broad grant of termination authority in Section 3036(e)(1), which "fairly exudes deference to the Director," *Webster*, 486 U.S. at 600, provides that the Director's exercise of this authority "shall not affect the right of the officer or employee to seek

11

or accept employment in any other department, agency, or element of the United States Government if declared eligible for such employment by the Office of Personnel Management," 50 U.S.C. § 3036(e)(2).  But this provision does not confer any substantive or procedural post-termination rights; it simply ensures that any employee terminated pursuant to the Director's discretionary authority is free to seek future public employment.  But plaintiffs here do not allege that they have been deprived of an opportunity to seek future public employment.  Rather, plaintiffs seek to maintain employment within their respective agencies.  Section 3036(e)(2) thus is irrelevant to plaintiffs' due process claim and provides no basis whatsoever for the district court's extraordinary conclusion that the agencies are required to offer employees a chance to appeal a termination decision or seek reassignment to another position within the agency before the termination is effectuated.

Plaintiffs' view (Br. 25-26) that they have a freestanding due process right to post-termination appeal and reassignment under *Mathews v. Eldridge*, 424 U.S. 319 (1976), is equally flawed.  In support of this, plaintiffs note that the question of what procedures are constitutionally sufficient to protect a legitimate property interest requires a balancing of several factors,

including "the risk of an erroneous deprivation" through existing governmental processes and whether "the probable value" of "additional or substitute procedural safeguards" outweighs the fiscal and administrative burdens of providing these safeguards. *Id.* at 335. Plaintiffs suggest that these considerations entitle them to appeal any termination and seek reassignment within the agencies, regardless of whether the National Security Act or AR 4-16 require such procedures.

This argument fundamentally misunderstands the applicable law. *Eldridge* concerned the termination of an individual's Social Security disability benefit payments without an opportunity for an evidentiary hearing. As the Supreme Court explained, "the interest of an individual in continued receipt of these benefits is a *statutorily created* 'property' interest protected by the Fifth Amendment." *See Eldridge*, 424 U.S. at 332 (emphasis added). *Eldridge* thus demonstrates that plaintiffs cannot allege a colorable constitutional claim without first identifying a source of positive law creating a substantive entitlement to a benefit. Only *after* determining that the statute created a cognizable entitlement to disability benefits did the Court proceed to analyze the question of what processes were constitutionally due before plaintiff could be deprived of that benefit. In

contrast, plaintiffs here have not—and cannot—identify any positive law

establishing a legitimate claim of entitlement to their continued employment

and thus have failed to establish a colorable constitutional due process claim

challenging their termination.[1]

Finally, plaintiffs also briefly suggest (Br. 30) that the district court

properly found that they have a protected property interest in ensuring that

the agencies follow their own regulations.  But a failure to follow regulatory

procedures does not, in and of itself, give rise to a constitutional due process

claim where, as here, the regulation preserves discretion.  As the Supreme

Court has explained, "[p]rocess is not an end in itself."  *Olim v. Wakinekona*,

461 U.S. 238, 250 (1983).  Due process protections do not apply unless the

plaintiff establishes "a *substantive* interest to which [he] has a legitimate

claim of entitlement."  *Id.* (emphasis added).  A regulation thus does not

---

[1] Plaintiffs also erroneously suggest (Br. 25) that an internal CIA
memorandum from 1979 supports their view that a protected property
interest can exist independent of any source of positive law.  But consistent
with *Eldridge* and other decisions of the Supreme Court, that memorandum
states that "[t]he analysis as to whether a protectible property interest
exists" turns on "whether statutes, legal rules, or some other explicit
understandings independent of the Due Process Clause itself support a
'legitimate claim of entitlement' to a particular thing or benefit."  Pl. Br.
Addendum 2 (quoting *Roth*, 408 U.S. at 577).

establish a cognizable property interest unless it "prescribe[s] substantive rules of decision." *Stewart*, 7 F.3d at 392.

As explained in the government's opening brief—and not meaningfully disputed by plaintiffs—AR 4-16 cannot plausibly be read to impose any substantive rules constraining the Directors' broad termination discretion. *See, e.g.*, *Webster*, 486 U.S. at 602 n.7 (declining to disturb the D.C. Circuit's prior finding that an earlier but functionally similar version of the regulation "plainly protect[s] the discretion granted [to] the Director"); *see also Doe v. Casey*, 796 F.2d 1508, 1519 (D.C. Cir. 1986) ("We cannot imagine how the CIA could have more plainly expressed its intent to protect the discretion granted it by" the National Security Act), *aff'd in part, rev'd in part sub nom.*, *Webster v. Doe*, 486 U.S. 592 (1988); *Gates*, 981 F.2d at 1320 (likewise holding that the same then-existing version of AR 4-16 did not "contradict the statutory grant of discretion to the Director"). And in any event, as discussed further below, plaintiffs have not established that the agencies violated any procedural requirements contained within AR 4-16.

### B. Plaintiffs Have Not Demonstrated That They Are Likely to Succeed on the Merits of an *Accardi* Claim

**1.** Plaintiffs' failure to grapple with the text of AR 4-16 is also fatal to the merits of their claim under *United States ex rel. Accardi v. Shaughnessy*,

347 U.S. 260 (1954). That case affirms the general principle that agencies must "follow their own rules, even gratuitous procedural rules that limit otherwise discretionary actions." *Steenholdt v. FAA*, 314 F.3d 633, 639 (D.C. Cir. 2003). The district court relied upon *Accardi* to support its holding that the Directors were required to follow certain procedures for appeal and reassignment, set forth in AR 4-16 Sections II.C and II.E, before effectuating plaintiffs' termination. That conclusion is wrong because the plain language and structure of AR 4-16 make clear that those procedures do not—indeed cannot—apply to termination decisions by the Directors themselves.

As explained in the government's opening brief (at 34-35), the appeal and reassignment procedures set forth in AR 4-16 plainly do not apply where, as here, the Director of the CIA has invoked his statutory authority to terminate employees under the National Security Act. Indeed, AR 4-16 unambiguously recognizes that the Director may terminate employment "without regard to the procedural requirements" of the regulation. JA063 (AR 4-16 § II.A). Likewise, Section II.D, which provides for "Termination Without Procedures," states that "any employee may be terminated from the [CIA] at any time without regard to *any* procedural steps set forth in this

regulation or elsewhere when the [Director of the CIA], in his discretion, deems it necessary or advisable in the interests of the United States." JA067-68 (AR 4-16 § II.D) (emphasis added).

Moreover, on their face, the procedures governing consideration for reassignment and appeal outlined in Sections II.C and II.E apply only to employment determinations made by lower-level officials. Section II.C(4), for example, discusses a reassignment consideration process that applies when the "head of a component" determines that an employee is excess to the needs of the service, and that process culminates in a final decision by the Chief Operating Officer. JA066-067 (AR 4-16 § II.C(4)). And the appeal process detailed in Section II.E contemplates that some termination decisions may be appealed to the Chief Operating Officer and, eventually, to the Director. But there is an obvious disconnect between these procedures and termination decisions made by the Director of the CIA himself; it would simply make no sense to appeal a decision by the Director to some lower-level official. Thus, as the D.C. Circuit explained long ago when analyzing a functionally similar version of the CIA's regulations in *Webster*, the specific procedures set forth in Sections II.C and II.E "'normally' will govern separations from the CIA," but the regulation as a whole "cautions that these

procedures need not be followed for terminations made" by the Director. *Casey*, 796 F.2d at 1519 (alteration omitted); *see also Webster*, 486 U.S. at 602 n.7 (declining to disturb the D.C. Circuit's findings with respect to the CIA's regulations).

**2.** In their responsive brief, plaintiffs make no meaningful attempt to address any of the government's arguments that AR 4-16 does not confer rights that limit the Directors' discretion under Sections 3036(e) and 3024(m). Instead, plaintiffs offer a different argument— that AR 4-16 cannot "suspend" post-termination rights that plaintiffs erroneously believe can be found in the National Security Act. *See* Br. 28-30. But that gets matters backwards. The question is not whether AR 4-16 nullifies or "suspends" rights conferred by other regulations or statutes; the question (as the district court properly recognized) is whether AR 4-16 itself confers rights that limit the Directors' broad termination discretion. As explained in the government's opening brief, the answer to that question is a resounding no. Plaintiffs make no attempt to respond to the government's arguments on this issue or engage in any meaningful way with the text of AR 4-16.

In lieu of any textual analysis of AR 4-16, plaintiffs instead dedicate substantial discussion (Br. 32-36) to arguing that the *Accardi* doctrine is

grounded in constitutional principles. That is both wrong and irrelevant. As explained in our opening brief (at 27-28), the Supreme Court has stated that *Accardi* merely "enunciate[d] principles of federal administrative law," not "constitutional law." *Board of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 92 n.8 (1978), and the D.C. Circuit agrees, *see Crosby-Bey v. District of Columbia*, 786 F.2d 1182, 1186 (D.C. Cir. 1986) (per curiam). But this Court need not decide whether *Accardi* is a constitutional doctrine or simply a principle of administrative law because, even assuming it is the former, plaintiffs have not adequately demonstrated the necessary elements of an *Accardi* claim.[2]

As explained in our opening brief (at 30), the *Accardi* doctrine does not apply unless plaintiffs "demonstrate prejudice resulting from the" alleged violation of agency rules. *United States v. Morgan*, 193 F.3d 252, 267 (4th

---

[2] Contrary to plaintiffs' argument (Br. 34-35), this Court does not view *Accardi* as a constitutional rule of law. In *United States v. Heffner*, 420 F.2d 809 (4th Cir. 1969), the Court relied on *Accardi* for the unexceptional proposition that agencies are required to follow their own mandatory rules, regardless of how those rules are labeled. *Id.* at 812. It took no position on whether that outcome was mandated by the federal Constitution. And this Court's subsequent decisions strongly suggest that the failure to follow a regulation does not violate constitutional due process unless the plaintiff has already established a cognizable liberty or property interest. *See Wilson v. Johnson*, 805 F.2d 394 (4th Cir. 1986) (per curiam) (unpublished table decision); *see also Olim*, 461 U.S. at 250.

19

Cir. 1999).  This requires, at a minimum, that plaintiffs demonstrate (i) that the agency "inten[ded] to be bound" by the procedural rules within AR 4-16, *Vietnam Veterans of Am. v. Secretary of the Navy*, 843 F.2d 528, 538 (D.C. Cir. 1988), and (ii) that the relevant regulations were intended "primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion" or that the agency is "required by rule to exercise independent discretion" and failed to do so, *Morgan*, 193 F.3d at 267 (quoting *American Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538-39 (1970)).  Plaintiffs have not, and cannot, make either showing.

Plaintiffs cannot show that the CIA intended to be bound by AR 4-16 because the regulation repeatedly disclaims any intent to create rights or privileges that bind the agency.  JA063 (AR 4-16 § II.A); JA069 (AR 4-16 § II.F).  Section II.F, for example, states that nothing in the regulation should be "construed to create or confer on any person or entity any right to administrative or judicial review of [CIA] employment termination procedures, their implementation, or decisions or actions rendered thereunder."  JA069.

Likewise, plaintiffs cannot show that AR 4-16 was intended to confer procedural benefits upon individuals that limit the Directors' otherwise

unfettered discretion because the plain language of the regulation refutes any such claim.  Among other things, Section II.D states that the Director of the CIA's authority to terminate employees is "[n]ot constricted, limited, affected, or otherwise controlled by any of the procedures set forth in this regulation" and that the Director's exercise of this discretionary authority is "[i]n abrogation of the existence of any interests or privileges of any employee in his or her employment which might otherwise be created or established by this regulation or any other regulation, document, or law." JA068 (AR 4-16 § II.D).  These provisions are fatal to plaintiffs' *Accardi* claim.

Plaintiffs repeatedly suggest that this Court should not place "undue emphasis" on the fact that AR 4-16 is unpublished.  *E.g.*, Br. 36.  But the unpublished status of AR 4-16 is just one of several indications that the agency did not intend to be bound by any procedural rules within AR 4-16. The provisions of the regulation expressly disclaiming that it limits the Director's authority to terminate employees are far more powerful evidence of the agency's intent, and plaintiffs have no meaningful response to any of those provisions.

Plaintiffs also argue (Br. 28-29) that the disclaimers in Sections II.A, II.D, and II.F do not *prohibit* the agencies from providing individuals who are terminated by the Director with a procedure for appeal or reassignment because, in their view, those provisions ensure only that the Directors may terminate employment prior to providing any procedural rights. But the question of whether these disclaimers are *compatible* with some post-termination procedures is beside the point. Instead, to prevail on their *Accardi* claim, plaintiffs must demonstrate that the agency was *required* to provide a post-termination process for appeal and reassignment. And contrary to the district court's mistaken interpretation of the regulation, AR 4-16 does not require any such proceedings for discretionary terminations by the Director, whether before or after plaintiffs' termination. *See*, *e.g.*, JA068 (AR 4-16 § II.D) (providing that the Director may terminate employment "without regard to *any* procedural steps set forth in this regulation or elsewhere" (emphasis added)).

Indeed, application of the procedures the district court has now found are required would be burdensome and pointless. For example, the appeal process identified by the district court in AR 4-16 Section II.E states that termination decisions may be "appealed to the [Chief Operating Officer]" or,

"in cases where the [Chief Operating Officer] denies the initial appeal" or "serves as the terminating authority," to the Director of the CIA. JA068 (AR 4-16 § II.E(3), (4)). It would be anomalous to apply that regulation where, as here, the Director himself has made the discretionary decision to terminate, as such a decision cannot plausibly be subject to further consideration by a lower-level official. As explained in our opening brief (at 34-35), the district court ignored the obvious difficulties of applying the procedures in AR 4-16 to decisions by the Director of the CIA himself, and plaintiffs offer no response to these arguments.

Moreover, the distinction that plaintiffs attempt to draw between pre-termination and post-termination rights does not support the injunction the district court entered. The preliminary injunction prohibits the Directors from finalizing a termination unless or until the Directors have first demonstrated to the court's satisfaction that the agencies have complied with the appeal and reconsideration procedures that the court believed to be required. Because plaintiffs appear to acknowledge that the Directors may "terminate officers without any pre-termination procedural rights," Br. 45, there is no basis for the preclearance process the court has established before the agencies may terminate employees.

## II. The District Court Abused Its Discretion by Concluding That the Balance of Equitable Factors Weighs in Favor of a Preliminary Injunction

The district court also abused its discretion by concluding that plaintiffs had established a claim of irreparable harm based on alleged reputational injury. To prevail on a "stigma-plus" due process claim, a plaintiff must establish three elements: (1) "a statement stigmatizing his good name and damaging his standing in the community; (2) some type of dissemination or publication of the statement; and (3) some other government action that alter[s] or extinguishe[s] one of his legal rights." *Elhady v. Kable*, 993 F.3d 208, 225 (4th Cir. 2021) (alterations in original) (quotation marks omitted).

Plaintiffs assert (Br. 41) that they have credibly raised the prospect of irreparable harm based on allegedly "derogatory" language about Diversity, Equity, Inclusion, and Accessibility programs contained in Executive Order 14,151. But the Executive Order criticizes government policies and programs, not specific federal employees. And plaintiffs make no attempt to demonstrate that the policy views expressed in the Executive Order are either demonstrably false or defamatory under traditional defamation law. *See, e.g.*, Restatement (Second) of Torts § 564A (A.L.I. 1977), Westlaw

(databased updated Oct. 2024); *see also Evans v. Chalmers*, 703 F.3d 636, 659 (4th Cir. 2012) (Wilkinson, J., concurring) (opining that government officials should not be liable "for general statements that reference no individual and are therefore not even actionable under traditional defamation law").

Plaintiffs note that the Director of the CIA stated in a declaration submitted in this case that he exercised his discretion to terminate plaintiffs to effectuate the Executive Order. But that does not explain how plaintiffs' reputations have been or could be harmed by their termination. Plaintiffs do not claim that the Director made any derogatory statements in that declaration. Moreover, plaintiffs have proceeded under pseudonyms in this case, and the agencies have not—and will not—publicly link plaintiffs to the former diversity office or Diversity, Equity, and Inclusion programs more generally. Indeed, AR 4-16 itself states that the reasons for a CIA employee's termination under the Director of the CIA's authority are generally not provided to any other employee, including other federal agencies, without the employee's consent. JA070 (AR 4-16 § II.H). Plaintiffs thus have not demonstrated any non-speculative risk of potential future reputational injury, which is insufficient to support the extraordinary remedy of a preliminary injunction.

Nor have plaintiffs demonstrated irreparable harm based solely upon a deprivation of any alleged post-termination right to appeal or reassignment. Plaintiffs note (Br. 41-42) that the district court found that the denial of plaintiffs' constitutional rights constitutes per se irreparable injury. But as already explained, plaintiffs' *Accardi*-based claim that the agencies failed to follow the procedures in AR 4-16 cannot properly be characterized as a constitutional claim. And even if it could, virtually every employment claim against the government involves some alleged violation of internal regulations or statutes. If such an allegation alone were sufficient to establish irreparable harm, the district court's analysis would effectively compel a finding of irreparable harm in almost every personnel case. That conclusion cannot be reconciled with Supreme Court precedent holding that, in the absence of a "genuinely extraordinary situation," the imminent loss of government employment "will not support a finding of irreparable injury, however severely [it] may affect a particular individual." *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974). Indeed, *Sampson* itself involved a claim that an employee's termination was not effectuated in accordance with the procedural requirements of a regulation. *Id.* at 66. The Court nevertheless concluded that this was insufficient to demonstrate irreparable harm,

cautioning that irreparable harm could not exist unless the plaintiff made a showing "sufficient in kind and degree to override [the] factors cutting against the general availability of preliminary injunctions in Government personnel cases." *Id.* at 84.  And the concerns cutting against the general availability of preliminary injunctions in government personnel cases are particularly weighty where, as here, Congress has committed termination authority to the Director's discretion by law.

Plaintiffs suggest (Br. 37) that this case is "extraordinary" insofar as the Directors terminated the employment of dozens of intelligence officers beyond simply the plaintiffs in this case.  But the overall number of people who have been terminated does not demonstrate "extraordinary" harm *to plaintiffs*.  *Cf. Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2557 (2025) ("[T]he question is not whether an injunction offers complete relief to *everyone* potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the court*.").  The district court's finding of per se irreparable injury based on an alleged constitutional violation resulting from violations of AR 4-16 cannot be reconciled with the high standards for demonstrating irreparable injury based on the loss of government employment.

## III. The Injunction Is Overbroad and Improperly Intrudes on the Directors' Discretionary and Otherwise Unreviewable Authority

Plaintiffs also fail to offer any meaningful response to the argument in our opening brief (at 42-45) that the district court abused its discretion by prohibiting the agencies from terminating plaintiffs' employment without first submitting evidence to the court that plaintiffs have "received the appeal and consideration for reassignment" procedures the court believed to be required under AR 4-16 and seeking the court's prior approval. JA235. As explained, that relief is overbroad in two significant respects.

First, AR 4-16's procedures for appeal and reassignment are, by their terms, plainly inapplicable and non-binding. Neither the district court nor plaintiffs have ever explained how, for example, the process for appeal of a decision to a higher-level official detailed in those procedures could apply where, as here, the Directors themselves make the decision to terminate. Compliance with the injunction thus would require the agencies to invent new procedures that are not contained within AR 4-16, which expressly states that it does not limit the Directors' broad discretion to terminate employees or impose any extra procedural requirements.

Second, the district court's ongoing oversight role improperly intrudes on the Directors' exercise of authority under Section 3036(e) of the National Security Act. As the Supreme Court recognized in *Webster*, this provision is an "integral part" of the National Security Act, "because the [CIA]'s efficacy, and the Nation's security, depend in large measure on the reliability and trustworthiness of the [CIA]'s employees." *Webster*, 486 U.S. at 601; *see also Department of the Navy v. Egan*, 484 U.S. 518, 529 (1988) ("[T]he protection of classified information must be committed to the broad discretion of the agency responsible and this must include broad discretion to determine who may have access to it.").

By insulating the Directors' determinations from judicial review, Congress sought to avoid undue judicial interference, second-guessing by the courts, and potentially burdensome and invasive discovery, including potential depositions of the Directors themselves and disclosures that may involve classified information or other sensitive matters of national security. *Webster*, 486 U.S. at 600; *id.* at 620-21 (Scalia, J. dissenting); *cf. Hegab v. Long*, 716 F.3d 790, 794 (4th Cir. 2013) ("[A] court should not be put in the position of second-guessing the discretionary judgment of an executive agency assessing national security risk."). The district court's injunction,

which requires the Directors to dedicate time and resources to reassess whether plaintiffs' continued employment is in the interests of the United States and to seek the court's blessing before effectuating a termination, implicates exactly these same concerns.

Plaintiffs suggest (Br. 44-45) that the district court's injunction is proper because, in their view, Congress sought primarily to ensure that agency employment could be terminated without providing any *pre*-termination procedural rights. But that argument fails because the district court's injunction plainly requires the agencies to provide appeal and reassignment procedures—and seek the court's prior approval—*before* finalizing a termination decision. The injunction thus intrudes into precisely the same realm that, by plaintiffs' own admission, Congress left entirely to the Directors' discretion.

Nor is it significant (Br. 18, 45) that plaintiffs maintain their security clearances and have not been accused of misconduct. As *Webster* acknowledges, the statute permits termination of employment "whenever the Director 'shall *deem* such termination necessary or advisable in the interests of the United States'"—not "simply when the dismissal *is* necessary or advisable to those interests." 486 U.S. at 600. Put simply, the Directors'

discretion to remove under the National Security Act is not limited to terminations for misconduct. So long as the Directors make the determination that they deem the termination necessary or advisable in the interests of the United States—as the Directors did here in accordance with Executive Order 14,151—that is sufficient. And because that decision is committed to agency discretion by law, the district court had no basis to interfere with the Directors' termination decisions, regardless of the reasons for those decisions.

Finally, plaintiffs are wrong to suggest (Br. 17-18) that the Directors improperly exercised their authority by terminating multiple employees at the same time. As noted, the National Security Act requires only that the Directors "deem" the termination necessary or advisable in the interests of the United States. So long as that determination has been made, it makes no difference whether the Directors made that determination as applied to a single employee or dozens of employees. If, for example, the Directors concluded that there had been an unprecedented amount of national security leaks from one component of the agency, the Directors could readily deem it to be necessary or advisable in the interests of the United States to terminate all employees within that component without identifying the

specific source of the leak.  So too here, because the Directors' authority is not limited to terminating employment for misconduct, the Directors may readily deem it to be necessary or advisable in the interests of the United States to terminate multiple individuals in a component that has been closed pursuant to Executive Order 14,151.  In either case, the Directors' determinations are committed to their discretion by law and are beyond the scope of judicial review.

## CONCLUSION

For the foregoing reasons, the district court's preliminary injunction should be vacated.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. McARTHUR
*Deputy Assistant Attorney General*

ERIK S. SIEBERT
*United States Attorney*

CHARLES W. SCARBOROUGH

*s/ Jennifer L. Utrecht*
JENNIFER L. UTRECHT
*Attorneys, Appellate Staff*
*Civil Division, Room 7710*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 353-9039*

August 2025

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,439 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in CenturyExpd BT 14-point font, a proportionally spaced typeface.

*s/ Jennifer L. Utrecht*
Jennifer L. Utrecht

**CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.

*s/ Jennifer L. Utrecht*
Jennifer L. Utrecht