**25-1527**

IN THE

# United States Court of Appeals

FOR THE FOURTH CIRCUIT

JOHN DOE 1, *ET AL.*,

*Plaintiffs-Appellees,*

*v.*

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE, *ET AL.*,

*Defendants-Appellants.*

*On Appeal from the United States District Court for the Eastern District of Virginia*

## RESPONSE TO PETITION FOR REHEARING AND REHEARING EN BANC

Kevin Thomas Carroll
Partner, MARK S. ZAID, PC
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
718-791-5761

*Counsel for Appellees*

## TABLE OF CONTENTS


INTRODUCTION ... 1

FACTUAL BACKGROUND ... 4

PROCEDURAL BACKGROUND ... 5

ARGUMENT ... 8

I. Appellants' argument that the panel misread the Termination Regulation is not worthy of further review. ... 8

A. Never has anything like this happened in the Intelligence Community. ... 9

B. The panel's decision imposes no restriction on Appellant directors firing, without appeal, those who pose national security threats. ... 10

C. Appellant directors can still terminate Appellee officers if only they follow their regulations. ... 11

D. The government can change the Termination Regulation—indeed we believe they already have. ... 13

II. The panel respected the rule that purely procedural rights cannot give rise to due process claims. ... 14

III. The panel's decision is consistent with precedents involving intelligence officers. ... 16

CONCLUSION ... 17

## TABLE OF AUTHORITIES

### CASES

*Bd. of Regents of State Colls. v. Roth*,
408 U.S. 564 (1972) ..... 15

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985) ..... 15

*Doe 1 v. Off. of the Dir. of Nat'l Intel.*,
180 F.4th 536 (4th Cir. 2026) ..... *passim*

*Doe v. Casey*,
796 F.2d 1508 (D.C. Cir. 1986) ..... 3, 16

*Doe v. Gates*,
981 F.2d 1316 (D.C. Cir. 1993) ..... 1, 10

*Elrod v. Burns*,
427 U.S. 347 (1976) ..... 6

*Garraghty v. Va. Dep't of Corr.*,
52 F.3d 1274 (4th Cir. 1995) ..... 14

*Jackson v. Long*,
102 F.3d 722 (4th Cir. 1996) ..... 14

*Logan v. Zimmerman Brush Co.*,
455 U.S. 422 (1982) ..... 15

*Perry v. Sindermann*,
408 U.S. 593 (1972) ..... 15

*Strickland v. United States*,
32 F.4th 311 (4th Cir. 2022) ..... 1, 14, 15

*Webster v. Doe*,
486 U.S. 592 (1988) ..... 1, 3, 10, 16, 17

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)........................................................................................ 6

**STATUTES**

5 U.S.C. § 552 ........................................................................................... 13

50 U.S.C. § 3024(m)(1) .................................................................... 5, 9, 10

50 U.S.C. § 3036(e)(1)..................................................................... 5, 9, 10

**REGULATIONS**

CIA Regulation AR 4-16..................................................... 6, 8, 10, 15

**FEDERAL RULES**

Fed. R. App. P. 40(b)(2)(d)...................................................................... 13

**OTHER AUTHORITIES**

Exec. Order No. 14151, "Ending Radical and Wasteful Government DEI
Programs and Preferencing," 90 Fed. Reg. 8339 (Jan. 20, 2025).................. 4

Exec. Order No. 14173, "Ending Illegal Discrimination and Restoring
Merit-Based Opportunity," 90 Fed. Reg. 8633 (Jan. 21, 2025)..................... 4

## INTRODUCTION

The injunction issued by Judge Anthony J. Trenga of United States District Court for the Eastern District of Virginia is not an abuse of discretion.[1] This Court's decision in *Doe 1 v. Office of the Director of National Intelligence*, 180 F.4th 536 (4th Cir. 2026) (*Doe v. ODNI*), upholding that injunction is consistent with its prior decisions, and those of the Supreme Court, regarding the Fifth Amendment due process property interest rights of government employees generally,[2] and with the decisions of other United States Courts of Appeals and the Supreme Court specifically regarding intelligence officers' constitutional rights.[3] Appellants fail to identify any case on point with which the majority's decision and opinion conflict.

The parties agree on three points. First, per *Webster v. Doe*, federal courts may review "colorable constitutional claims" by Intelligence Community officers arising from terminations.[4] Second, per *Doe v. Gates*, intelligence officers lack judicially cognizable property interests in continued employment with their agencies.[5] Third, Appellants must maintain their directors' ability to summarily

---

[1] J.A. 235-265.

[2] *See Strickland v. United States*, 32 F.4th 311 (4th Cir. 2022).

[3] *See Webster v. Doe*, 486 U.S. 592 (1988).

[4] *Id.* at 603; *see also* Pet. for Reh'g & Reh'g En Banc (Reh'g Pet.) at 1.

[5] 981 F.2d 1316, 1320-21 (D.C. Cir. 1993).

terminate intelligence officers deemed to pose counterintelligence threats, without any rights of judicial review or appeal.

The parties, however, disagree on three other points. First, they disagree over whether the panel correctly interpreted the Termination Regulation. But the government's contention that the decision misinterprets an internal regulation[6] does not raise an issue of sufficient importance to warrant review by the full court. The case is *sui generis*; never in nearly eighty years has anything like this happened in the Intelligence Community. Furthermore, not only does the panel's decision allow Appellant directors to fire, without appeal, those who pose security threats, but Appellant directors can still terminate even Appellee officers so long as they follow their own regulations. Finally, if the Government does not like the panel's decision, it can rewrite the Termination Regulation. And indeed we believe it already has—thereby ensuring the holding here will have no application beyond this case.

In any event, the panel correctly interpreted the Termination Regulation. Contrary to Appellants' claim, the panel's decision does not contradict the provisions saying they do not create enforceable rights. As the panel explained, those provisions, read in context, simply disclaim any right to continued employment.

[6] Reh'g Pet. at 8-9.

Second, Appellants assert that the panel disregarded the principle that purely procedural rights cannot give rise to a due process claim. But the panel's decision respects that principle; instead, the panel found that the Termination Regulation contains substantive rules restricting decisionmakers. In particular, the panel explained that a "regulation creates an entitlement when it sets the substantive rules of decision in such a way that a particular outcome is mandated when certain conditions are met."[7] Appellants do not dispute that this legal test is correct.

Third, Appellants maintain that the panel's decision is inconsistent with *Webster v. Doe* and the District of Columbia Circuit's decision in *Doe v. Casey*,[8] as to the ability of directors to fire intelligence officers. Again, not so. Those cases concerned the ability to fire officers because they present security threats; there is no such allegation here.

Rehearing of any kind is therefore unwarranted.

---

[7] *Doe v. ODNI*, 180 F.4th at 546; *see also id.* (a regulation must "mandate[] a particular outcome, under certain circumstances" to establish a property interest).

[8] 796 F.2d 1508, 1519-20 (D.C. Cir. 1986), *aff'd in part, rev'd in part sub nom. Webster v. Doe*, 486 U.S. 592 (1988); *see also Webster*, 486 U.S. at 602 n.7 (declining to disturb this finding).

## FACTUAL BACKGROUND

On January 20, 2025, President Donald Trump issued an executive order describing diversity, equity, inclusion and accessibility (DEIA) programs as "illegal and immoral," and causing "immense public waste and shameful discrimination."[9] The order directed agency heads to terminate all DEIA offices and positions.[10]

On January 21, 2025, President Trump issued another executive order directing agencies to terminate all DEIA programs.[11] The order described them as undermining national unity and threatening Americans' safety with "disastrous consequences."[12]

On January 24, 2025, the Office of Personnel Management (OPM) directed agencies to place all DEIA office employees on leave, in a memorandum entitled "Guidance Regarding RIFs of DEIA Offices."[13] RIF is an acronym for "reduction-in-force." OPM directed agencies to implement RIF procedures immediately, eliminating all DEIA positions and offices.

---

[9] Exec. Order No. 14151, "Ending Radical and Wasteful Government DEI Programs and Preferencing," 90 Fed. Reg. 8339 (Jan. 20, 2025).

[10] *Id.* §§ 1, 2(b)(i).

[11] Exec. Order No. 14173, "Ending Illegal Discrimination and Restoring Merit-Based Opportunity," 90 Fed. Reg. 8633 (Jan. 21, 2025).

[12] *Id.* §§ 1-2.

[13] J.A. 232.

While there is no such thing as a "DEIA officer" in the Intelligence Community, circa February 14, 2025, Appellants the Office of the Director of National Intelligence (ODNI) and the Central Intelligence Agency (CIA) and those agencies' directors notified Appellees, intelligence officers from a number of professional disciplines, of their impending termination. The directors sought to fire these officers based only upon their temporary assignments or additional duties associated with implementing the civil rights laws of the United States within their agencies.

ODNI's Deputy Chief Operating Officer and the CIA Director sought to fire their officers not as matters of their own discretionary judgments about the national interests of the United States, in the terms of the National Security Act statutes emphasized by Appellants.[14] Rather, per their own statements, Appellants tried to terminate Appellees specifically to effectuate the executive order ending DEIA programs, and OPM's related RIF memorandum.[15]

## PROCEDURAL BACKGROUND

On February 17, 2025, Appellees, nineteen career intelligence officers, sought to enjoin Appellants from terminating them. CIA Regulation 4-16, hereinafter the "Termination Regulation," provides officers being fired pursuant to a RIF rights of

---

[14] 50 U.S.C. §§ 3024(m)(1), 3036(e)(1).

[15] J.A. 73, 76.

help seeking reassignment within the Agency, and to appeal their terminations to the director.[16] After Appellants denied Appellees' requests for reassignment help and appeal, the district court concluded that the Termination Regulation "may be enforced as a matter of constitutionally protected procedural due process."[17] On March 31, 2025, the district court therefore enjoined the directors from firing the intelligence officers without first showing that Appellants granted Appellees their rights, per the regulation applying to officers being RIF'ed, of reassignment help and appeal.[18]

Following the test set forth by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*,[19] the district court found that (1) the intelligence officers are likely to succeed on the merits of their due process claim; (2) they suffered irreparable harm from the deprivation of their constitutional rights,[20] and reputational injury from the executive orders' disparagement of the DEIA programs upon which they worked; (3) the balance of equities tipped in their favor as they faced termination absent misconduct or poor performance, and most were only

---

[16] J.A. 66-69 (AR 4-16(II)(C)(4), (E)).

[17] J.A. 261.

[18] J.A. 235-236.

[19] 555 U.S. 7 (2008).

[20] Denial of constitutional rights constitutes irreparable harm. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

temporarily assigned to DEIA roles, while requiring agencies to follow internal regulations imposed a minimal burden compared to the economic and reputational harm facing the officers; and (4) that the public interest weighed in favor of injunctive relief given the officers' talent and experience, rather than "hiring new personnel who require significant onboarding and training to fill vital national security roles."[21]

This Court affirmed the decision below. The panel held that Appellees' terminations infringed upon their Fifth Amendment Due Process Clause property interest in Appellants following agency regulations granting the intelligence officers their rights of reassignment help and appeal, as granted under the Termination Regulation.[22] Importantly, the Court reiterated that requiring "the Agencies to comply with their own termination procedures does not call into question the discretion of the Directors to effectuate terminations."[23]

This Court found that given appellate courts' deference to district courts' possession of wide discretion in crafting measures for injunctive relief, the injunction issued below is not overly broad.[24] That narrow injunction only requires

---

[21] J.A. 259-263.

[22] *Doe v. ODNI*, 180 F.4th at 546-47.

[23] *Id.* at 548.

[24] *Id.* at 550.

that an Appellant seek the district court's approval in advance and establish that it provided an Appellee with his or her rights of reassignment help and of appeal, per the Termination Regulation, before a director ultimately fires them.[25]

Upon Appellees' information and belief, after oral argument in this case, Appellant CIA began to amend AR 4-16. We understand that the new rules now eliminate even the limited rights to which officers were previously entitled under the Termination Regulation. The new rules are classified, and we have filed a Freedom of Information Act request for the exact text of them. This Court could presumably ask the government to produce them if it so wishes.

## ARGUMENT

### I. Appellants' argument that the panel misread the Termination Regulation is not worthy of further review.

The case is *sui generis*; never in seventy-nine years has anything like this happened. The panel's decision imposes no restriction on Appellant directors firing, without appeal, those who pose national security threats. Appellant directors can still terminate even Appellee officers if only they follow their own regulations. The government can change its Termination Regulation—and indeed we believe that it already has.

[25] J.A. 235-236.

### A. Never has anything like this happened in the Intelligence Community.

Never did any of the thirty-three individuals who served as Directors of Central Intelligence (DCI), CIA Directors (D/CIA) or Directors of National Intelligence (DNI) before Appellant Directors Gabbard and Ratcliffe use the National Security Act's Section 3024 or 3036 authorities to terminate more than one officer at a time, nor for any reason other than security concerns—including current CIA Director Ratcliffe in his previous role as DNI.[26] Officers only got terminated on individual bases and for counterintelligence reasons under these unusual statutory authorities.

Attempting to use the directors' National Security Act discretionary authorities to terminate an intelligence officer's employment whenever they deem it "necessary or advisable" in the national interest,"[27] to fire nearly sixty officers because of a domestic political issue, DEIA, is unprecedented. As District Judge Trenga observed, "[a]t bottom, plaintiffs are being penalized for being in the temporary place at the wrong time when E.O. 14151 was issued."[28] While Section 3024 and 3036 authorities are not limited by the statutes' terms to the national security interests of the United States related to individual officers, that is clearly

[26] J.A. 207-208.

[27] 50 U.S.C. §§ 3024(m)(1), 3036(e)(1).

[28] J.A. 262; *see also Doe v. ODNI*, 180 F.4th at 544.

how every previous DCI, D/CIA and DNI appointed by both Democrats and Republicans understood and carefully wielded their unique discretion.

### B. The panel's decision imposes no restriction on Appellant directors firing, without appeal, those who pose national security threats.

Appellees agree that Appellants maintain the ability to terminate, without right of appeal, intelligence officers posing security threats. The government will not simply take "yes" for an answer here from Appellees, the district court or the majority, and continue to beat a dead horse.

This authority is established not only by *Webster v. Doe* and *Doe v. Gates* as a matter of constitutional law, but by statutes stating that the directors may, at their discretion, terminate an officer's employment when they deem it "necessary or advisable in the interests of the United States,"[29] and also by Agency Regulation 4-16 at paragraphs (II)(E)(2). That regulation states that when an officer's employment is being terminated specifically "because of revocation of access to classified information," the Termination Regulation upon which Appellees rely for their own right of appeal does not apply.[30] There is no allegation by the government that Appellees fall into this category,[31] and no one cares about national security more

[29] *See supra*, n.27.

[30] J.A. 68.

[31] *Doe v. ODNI*, 180 F.4th at 542.

than Appellees, whose careers are entirely dedicated to protecting this country from foreign threats.

This Court's decision and opinion neither pose significant operational burdens to the judiciary or the agencies, nor pose separation of powers issues, any more than does the federal judiciary's oversight of some foreign intelligence surveillance activities, or its disposition of arrest and search warrant applications in national security cases involving espionage or terrorism. By coincidence the jurist below, Judge Trenga, was until recently the presiding judge of the Foreign Intelligence Surveillance Court, regularly deciding whether or not the Executive Branch may conduct sensitive domestic intelligence collection operations. This Court can uphold its decision, and that of the court below, without causing the Executive Branch any counterintelligence problems that remain firmly within Appellants' remit to resolve.[32]

**C. Appellant directors can still terminate Appellee officers if only they follow their regulations.**

Appellants' statement of the issues fundamentally mischaracterizes the majority's decision and opinion as subjecting "the Directors' exercise of generally unreviewable discretion to terminate agency personnel under *Webster v. Doe* . . . to

[32] *Id*. at 552.

prior judicial approval and oversight."[33] This case is plainly about Appellees' post-termination rights of reassignment help and appeal.

Under the terms of this Court's decision, Appellants still properly hold wide discretionary authority to fire intelligence officers; however if such a termination takes place under the rubric of a reduction-in-force, per their own regulations, agencies are first to offer their expensively recruited, vetted, trained and often uniquely-experienced officers help finding other jobs within the Intelligence Community. If fired pursuant to a RIF, absent any security concerns, such officers retain per regulations a post-termination right of appeal of that employment action. Appellants Ratcliffe and ODNI themselves expressly described Appellees' firings to the district court as part of a RIF mandated by OPM.[34] The directors' own regulations regarding RIFs therefore apply to Appellees' terminations. As Circuit Judge Thacker said at oral argument, the government saying otherwise is an attempt to rewrite history.[35]

---

[33] Reh'g Pet. at 1. Appellants' statement of the issues before the Court describes the Termination Regulation as "a *nonpublic* agency termination regulation." *Id.* (emphasis added). This distinction is meaningless, as most internal CIA regulations are, understandably, classified.

[34] J.A. 73, 76.

[35] "I guess what I'm hearing is that the director can just rewrite history any time he wants. And here it was after the lawsuit was filed. He decided to suddenly make a declaration that he did something he clearly did not. Under oath." Oral Argument (Dec. 10, 2025) at 3:55-4:23.

### D. The government can change the Termination Regulation—indeed we believe they already have.

Since this Court heard oral argument, Appellants reportedly acted to amend their Termination Regulation to eliminate the procedural rights relied upon by Appellees before the district court and court of appeals. The precise contents of that amended regulation remain classified for now, and are the subject of a pending Freedom of Information Act request.[36]

As such, this Court's decision narrowly applies only to Appellees, and at most, perhaps those thirty or so other intelligence officers similarly situated in February 2025 as well. Far from, as the government asserts, the majority "opening the door to judicial review of a bevy of regulatory claims that would otherwise be unreviewable" and "transforming every termination decision into a searching inquiry into the Director's subjective motivations,"[37] there is no gatekeeping or slippery slope problem here now, if ever there was—and as Appellants know better than anyone. The majority's decision, while still deeply financially, personally and professionally important to Appellees, is no longer exceptionally important to the country, as it no longer applies to all officers at ODNI and CIA, much less the wider Intelligence Community.[38]

---

[36] 5 U.S.C. § 552.

[37] Reh'g Pet. at 19-20.

[38] Fed. R. App. P. 40 (b)(2)(d).

## II. The panel respected the rule that purely procedural rights cannot give rise to due process claims.

The Government does not challenge the legal rule the panel applied. This Court has held that procedural rights, in and of themselves, do not create substantive rights and property interests protected by the Due Process Clause.[39] The panel recited and respected those decisions. However the majority also recognized this Court's decision in *Strickland v. United States*[40] that a federal workers' Employment Dispute Resolution Plan created property interests when it enumerated and detailed substantive workplace rights, and outlined procedures for employees to follow if they believed their employer violated these rights. From these precedents, the panel explained that a "regulation creates an entitlement when it sets the substantive rules of decision in such a way that a particular outcome is mandated when certain conditions are met."[41]

Appellants do not challenge that legal test. Nor could they, for *Strickland* carefully relied upon Supreme Court precedents in *Board of Regents of State*

[39] *See Jackson v. Long*, 102 F.3d 722 (4th Cir. 1996); *see also Garraghty v. Va. Dep't of Corrections*, 52 F.3d 1274 (4th Cir. 1995).

[40] *Doe v. ODNI*, 180 F.4th at 546, 548 (citing *Strickland*, 32 F.4th at 347-52).

[41] *Id.*; *see also id*. (a regulation must "mandate[] a particular outcome, under certain circumstances" to establish a property interest).

*Colleges v. Roth*,[42] *Perry v. Sindermann*,[43] *Logan v. Zimmerman Brush Co.*,[44] and *Cleveland Board of Education v. Loudermill*,[45] to hold that employment regulations that mandate particular outcomes under certain circumstances create substantive rights that are protected property interests under the Fifth Amendment.[46]

As noted above, the most Appellants do is maintain that the Termination Regulation here does not meet that test. But as we have explained, that argument is not worthy of en banc review. Nor is it even correct on the merits. The Termination Regulation created an entitlement to rights of reassignment help and of appeal, as AR 4-16 constrained Appellants' discretion to fire officers terminated pursuant to a self-described RIF. The regulation further constrained directors' discretion to fire career officers such as Appellees, absent security reasons not present here, without first hearing their appeals for their jobs. Accordingly, as in *Strickland*, the agencies' own regulatory procedures here limit their directors' otherwise broad discretion to terminate officers, other than for security reasons, by granting their subordinates the narrow but still substantive property rights to and benefits of reassignment help

---

[42] 408 U.S. 564 (1972).

[43] 408 U.S. 593 (1972).

[44] 455 U.S. 422 (1982).

[45] 470 U.S. 532 (1985).

[46] 32 F.4th at 348-52.

before their firings under reductions-in-force are finalized, and of appeals of such terminations.

## III. The panel's decision is consistent with precedents involving intelligence officers.

Appellants claim that the panel disregarded the Supreme Court's guidance in *Webster v. Doe* that directors of intelligence agencies have broad discretion to terminate employees to safeguard "the nation's security."[47] But *Webster* is readily distinguishable. The CIA Director there concluded that the officer at issue "posed a threat to security."[48] Appellees are not accused of being security threats, and therefore unlike the fired officer in *Webster*, they retain their regulatory right to appeal their terminations.

Appellants also cite to the District of Columbia Circuit's decision in *Doe v. Casey* for the specific proposition that the Termination Regulation "need not be followed" for terminations made by intelligence agency directors.[49] For one thing, the Reagan Administration renounced that proposition in the Supreme Court, conceding "that the Agency's failure to follow its *own regulations* can be challenged

---

[47] Reh'g Pet. at 1.

[48] 486 U.S. at 595; *Doe v. Casey*, 796 F.2d at 1511. The unfortunate reason why the Director reached his determination was because the officer was gay.

[49] 796 F.2d at 1519-20.

under the APA."[50] For another, the Supreme Court did not address the issue at all.[51] At any rate, that case did not involve a reduction in force; it involved a firing due to a security threat. So the panel's decision here cannot conflict with *Doe v. Casey*.

## CONCLUSION

For the foregoing reasons, the petition for rehearing en banc should be denied.

Dated: September 17, 2026

Respectfully submitted,

/s/ Kevin Thomas Carroll
Kevin Thomas Carroll
VA Bar No. 95292
Partner, MARK S. ZAID, PC
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
718-791-5761

*Counsel for Appellees*

[50] 486 U.S. at 602 n.7.

[51] *Id.*

## CERTIFICATE OF COMPLIANCE

I, Kevin Thomas Carroll, counsel for Appellees and a member of the Bar of this Court, certify that this brief contains 3,288 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f). This brief has been prepared in 14-point Times New Roman font, a proportionally spaced typeface, using Microsoft Word.

Dated: September 17, 2026

Respectfully submitted,

/s/ Kevin Thomas Carroll
Kevin Thomas Carroll

*Counsel for Appellees*

## CERTIFICATE OF SERVICE

On September 17, 2026, I filed this brief using the Fourth Circuit's CM/ECF system.

Dated: September 17, 2026

Respectfully submitted,

/s/ Kevin Thomas Carroll
Kevin Thomas Carroll

*Counsel for Appellees*